* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes with necessary modifications.
 * * * * * * * * * * *
Defendants argue that the Deputy Commissioner committed reversible error when he denied their untimely motion to conduct an independent medical exam pursuant to N.C. Gen. Stat. §97-27(a). The first time that defendants raised the issue of an IME was in the Pre-trial Agreement stipulated into evidence on September 15, 2004. The Form 18 was filed on November 12, 2003 and a Form 33 on February 4, 2005. Mediation was held on June 2, 2004. It was clear that defendants had plenty of time to request an IME before the eve of trial. Deputy Commissioner Holmes did not commit reversible error in denying defendants' last minute request for an IME which would only have prolonged the resolution of this case. Furthermore, Dr. Hirsh as the treating physician was in the best position to address causation. Defendants had every opportunity to depose the initial treating physician and Dr. Anwar, and they chose not to.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter of this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between defendant-employer and plaintiff on September 2, 2003, and at all other times relevant to this claim.
3. Allied Claims was the workers' compensation carrier on the risk on September 2, 2003.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 49 years old at the time of the hearing before the Deputy Commissioner. She was earning $7.69 per hour. Plaintiff's average weekly wage was $324.18, yielding a compensation rate of $216.12. Because plaintiff had not been employed by Morehead Memorial Hospital for a full year, average weekly wage was computed by method 2 under N.C. Gen. Stat. §97-2(5). The Form 22 submitted by Morehead Memorial is incorrect. For example, on the Form 22 plaintiff is shown earning only $1,100.11 for the month of July. Yet defendants' Exhibit 2 shows that she worked 165.8 regular hours and 9.1 overtime hours, which, when multiplied by the wage rate of $7.69 for regular hours and $11.54 for overtime hours yields wages for the month of July of $1,379.97. The Form 22 shows no wages at all for June. The average weekly wage of $324.18 is derived from defendants' Exhibit 2 by multiplying regular hours by $7.69 and overtime hours by $11.54. The total wages of $3,112.14 thus derived is divided by the 9.6 weeks worked to yield an average weekly wage of $324.18.
2. Plaintiff had worked as a dietary aid for defendant-employer since June 27, 2003. She had previously worked as a dietary aid for 32 years.
3. On September 2, 2003, plaintiff slipped while carrying some trays and fell on her left side. The accident was reported to supervisor Peggy Peters and an accident report was filled out. Plaintiff was sent to the emergency room at Morehead Memorial Hospital where she was diagnosed with a contusion to her left side. She was given medications and allowed to return to work. The slip and fall was an interruption of the work routine and constituted an injury by accident within the course and scope of plaintiff's employment. Defendants did not deny the slip and fall; they denied the medical consequences.
4. Plaintiff continued to perform her regular job as a dietary aid with defendant-employer for six weeks. During this time, plaintiff continued to have pain down her left side that did not improve, but gradually worsened. After working each day, plaintiff soaked in a hot bathtub to try to relieve her pain. Defendants presented three witnesses (Pat Floyd, Peggy Peters, and Gaye McDaniel) for the proposition that plaintiff performed her normal job duties in the weeks after the fall with no sign of injury, no request for medical treatment (although free medical treatment was available across the street) and no work accommodations. This testimony is of little value when plaintiff admits working and appears to have a stoic, non-complaining nature. Plaintiff's testimony about her continued work in the face of increasing pain is credible.
5. On October 18, 2003, plaintiff could not get out of bed due to extreme pain. She was taken to the emergency room and referred to Dr. Anwar for additional treatment. Dr. Anwar obtained an MRI which showed a large herniated disc with considerable displacement of the sac and nerve roots. Dr. Anwar referred plaintiff to a neurosurgeon, Dr. James R. Hirsch, for surgical evaluation.
6. Plaintiff was seen by Dr. Hirsch on November 14, 2003, who found her to be myelopathic. He ordered a second MRI to confirm the location of the herniated disc. Upon receiving the results of the MRI, Dr. Hirsch recommended immediate surgery to avoid additional damage to the spinal cord. Surgery was performed on November 18, 2003, at the L1-2 level, at which time he found large disc fragments compressing the spinal cord.
7. Following surgery, plaintiff developed instability at the surgery site. As a result of the instability, plaintiff has developed a recurrent herniation that may require a fusion.
8. Plaintiff has permanent damage to her spinal cord as a result of the large herniated disc at L1-2 that occurred on September 2, 2003, when she fell at work. She has difficulty sleeping, walking, and standing. She has pain in her back and pain and numbness in her leg which causes her to have an unsteady gait and lack of balance. She has difficulty going up or down steps due to the numbness in her leg.
9. Plaintiff's description of the injury and her symptoms after the injury were corroborated by the history that she provided to Dr. Hirsch. Plaintiff's fall was witnessed by her supervisor, Peggy Peters, who testified at the hearing before the Deputy Commissioner.
10. Plaintiff developed a rip in the capsule of the disc at L1-2 on September 2, 2003, when she fell on her left side. As plaintiff continued to work, her condition progressively worsened, and disc fragments gradually leaked out of the rip and began to compress her spinal cord. Dr. Hirsch testified, and the Full Commission finds as fact, that plaintiff's herniated disc at L1-2 and subsequent instability and herniation at that level were caused by the September 2, 2003, fall at work, and the same rendered her unable to earn wages from and after October 23, 2003.
11. Dr. Hirsch testified, and the Full Commission finds as fact, that plaintiff was not at maximum medical improvement and was not able to return to any type of employment at the time of the hearing before the Deputy Commissioner. Plaintiff has not worked since October 23, 2003. She has not received any temporary total disability benefits, and medical bills after the initial emergency room visit have not been paid by defendants.
12. Dr. Hirsh testified that Ms. Austin's symptoms of initial pain on the left side that gradually increased to the point that she could not get out of bed, were consistent with a rip in the capsule at the time of the fall and a gradual leakage of disc fragments into the spinal canal upon her continuation of her job as a dietary aid. Defense counsel questioned Dr. Hirsh as to whether herniations can be caused without trauma. His opinion was that they can, but that it would be very rare at the level of L1-2. Further support of his opinion that the herniation occurred as a result of the injury was the size of the fragments that he found at surgery. He testified that it would be very unlikely to have a spontaneous herniation given the size of the fragments. He was adamant in his testimony that the fall caused the herniation.
13. Defendants argue that Dr. Hirsh's opinions are just a "theory" and that his causation opinion lacked information on critical facts surrounding the September 2, 2003 fall. To the contrary, Dr. Hirsh had all of the facts before him when he provided his opinion. Beginning on page 21 of his deposition and continuing on to page 22 of his deposition, Dr. Hirsh was asked to assume certain facts to be true. Those facts were that plaintiff fell on September 2, 2003 falling on her left side. That she continued to work at her regular job at the hospital taking drinks and condiments to the pantries of each floor until October 18 when she woke up with extreme pain. Dr. Hirsh was provided additional information later in his deposition from defense counsel that Ms. Austin continued to work lifting cans of soda, cases of soda and milk and that she continued to do her normal job without any signs of being in pain or asking for assistance. Dr. Hirsh did not change his testimony when provided with all of these facts. Instead he testified as follows:
 Q. (by defense counsel) Okay. If you'll just assume, Doctor, a set of facts. I know you've been given one set of facts and my set of facts is very similar. But if you'll assume for a moment that Ms. Austin fell on September 2, 2003; that she was diagnosed with a contusion on the left side of her body; that she was able to perform her normal job duties thereafter for about seven weeks. These included cartons of soda, cartons of milk, pushing carts that were full of soda, milk, et cetera, up to various floors at the hospital, standing on her feet most of the day, at work, washing dishes, serving food in the cafeteria line. Assuming that she did this job with no signs of any difficulty for seven weeks, assuming that during that time she did not seek medical treatment, although free medical treatment was available to her, assuming that she testified on October 18 of 2003 she woke up in excruciating pain. She was unable to get out of bed, she was unable to ambulate, and on that date her pain was much more severe than before. If you'll assume those facts —
Ms. Curry: Objection
 Q. I'm sorry, and assume further that she obtained treatment at that point, additional treatment. If you'll assume those facts, can you state to a reasonable degree of medical certainty that the disk herniation was caused when she fell as opposed to was caused on October 18, 2003, when her symptoms changed dramatically?
 A. Yeah. I think everything continues to be consistent that this fall was the most likely cause for her disk rupture.
 It is clear from Dr. Hirsh's deposition that he had all of the facts when he provided his opinion and his opinion did not waiver.
14. This appeal was brought by defendants. Plaintiff's attorney is entitled to a reasonable fee at the expense of defendants for her effort in defending the appeal. In view of the experience of the attorney, the nature of the case, the effort expended, and fees generally paid in similar situations, the Full Commission finds in its discretion that a fee of $2,000.00 would be reasonable.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on or about September 2, 2003. As a result of the September 2, 2003, accident, plaintiff developed a herniated disc at L1-2 that gradually worsened to the point that she required surgery to remove the disc fragments that were compressing her spinal cord. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has been unable to earn wages and thus temporarily totally disabled since October 23, 2003, as a result of her compensable injury by accident, and is entitled to temporary total disability compensation at the weekly rate of $216.12 from October 23, 2003, and continuing until further order from the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to receive medical treatment for her back condition so long as such treatment should effect a cure, give relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. Plaintiff has not shown that the defendants unreasonably defended this claim.
N.C. Gen. Stat. § 97-88.1.
5. Since plaintiff had worked less than a year with this employer, method 2 of N.C. Gen. Stat. § 97-2(5) is the proper method to use in calculating average weekly wage and is fair and just to both parties. N.C. Gen. Stat. § 97-2(5).
6. Since this appeal was brought by the insurer and since the Full Commission by this Opinion and Award orders compensation to be paid to plaintiff, the Commission has the discretion pursuant to N.C. Gen. Stat. § 97-88 to award reasonable attorney fees for plaintiff's defense of the appeal. N.C. Gen. Stat. § 97-88.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for all medical treatment incurred or to be incurred as a result of plaintiff's compensable injury by accident of September 2, 2003, as long as such treatment effects a cure, gives relief, or tends to lessen plaintiff's period of disability. Said treatment includes, but is not limited to, all treatment recommended by Dr. Hirsch.
2. Defendants shall pay to plaintiff temporary total disability compensation at the weekly rate of $216.12 from October 23, 2003, and continuing until further order of the Commission, subject to the attorney's fee provided herein. The portion of this amount that has accrued shall be paid to plaintiff in a lump sum.
3. Defendants shall pay a reasonable attorney's fee to plaintiff's counsel in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff herein. Fees that are based on the portion of plaintiff's award that has accrued shall be paid to plaintiff's counsel in a lump sum; thereafter, plaintiff's counsel shall receive every fourth check of compensation due plaintiff. Defendants shall additionally pay a fee of $2,000.00 to plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-88.
4. Defendants shall pay to plaintiff interest at 8 percent per year from the date of the hearing before the Deputy Commissioner on all compensation due until such compensation is paid. Compensation due prior to the date of the hearing before the Deputy Commissioner shall be summed and bear interest from that date. Compensation due after the date of the hearing before the Deputy Commissioner shall bear interest from the due date to the date paid.
5. Defendants shall pay the costs, including an expert witness fee of $400.00 to Dr. James R. Hirsch if not already paid pursuant to prior order.
This 3rd day of October 2005.
 S/_______________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER